IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JULIAN THOMAS,

                Petitioner,               OPINION AND ORDER

v.

                                                 3:16-cr-00044-wmc

UNITED STATES OF AMERICA,            3:20-cv-00783-wmc

                Respondent.

---

Under 28 U.S.C. § 2255, petitioner Julian Thomas filed a motion to vacate his convictions for armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d), as well as for brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). (Dkt. #254.)[1] Thomas claims his trial counsel was ineffective in a number of respects, some of which he already raised unsuccessfully in this court and the Seventh Circuit on direct appeal. Rule 4 of the Rules Governing Section 2255 Cases directs this court to enter a dismissal if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief[.]" When the court reviews a petition for the first time, it evaluates whether the petition crosses "some threshold of plausibility" before the government will be required to answer. *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003); *Dellenbach v. Hanks*, 76 F.3d 820, 822 (7th Cir. 1996). Because Thomas cannot relitigate the claims already addressed in this court and on appeal, and he otherwise fails

---

[1] A separate, civil action was opened for the motion to vacate in Case No. 20-cv-783 (dkt. #1), although the citations above are to the docket numbers in Thomas's original criminal case, in which the motion to vacate was fully briefed. Because the motion to vacate will be denied, the court will also deny Thomas's later motion in the civil case for decision on his § 2255 motion as moot. (Case. No. '783, dkt. #5.)

to articulate a plausible claim for relief under the demanding standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1994), his motion to vacate must be denied and this action will be dismissed.

## BACKGROUND[2]

### A. Bank Robbery

On October 7, 2014, two men robbed the Peoples Community Bank in Plain, Wisconsin. On May 11, 2016, a federal grand jury in Madison returned an indictment against petitioner Julian Thomas and his co-defendant James Thompson, charging them with armed bank robbery and brandishing a firearm during a crime of violence in violation of 18 U.S.C. §§ 2113(a), (d) and 924(c). Thomas and Thompson were then arrested pursuant to a warrant.

Acting under 18 U.S.C. §§ 2703(c)(1)(B) and (d), the government also applied for and obtained text message records for a phone number connected to Thomas. The government's application had identified two numbers associated with cell phones belonging to Thomas in October 2014, representing that there may have been activity on those phones during the time frame of the charged bank robbery. (Dkt. #40 at 3.)

Thomas's trial attorney filed several motions in limine, including motions to: (1) exclude the testimony and notes of one of the government's witnesses, state probation officer Robert Lynn, who would testify to Thomas's plans to execute the robbery; (2)

---

[2] This brief background is intended to set forth the most basic facts and procedural posture for purposes of deciding the pending § 2255 motions. A more detailed summary can be found in the Seventh Circuit's opinion affirming Thomas's conviction (dkt. #253-1).

2

exclude charts showing phone calls between Thompson and a number alleged to belong to Thomas; (3) exclude an audio recording of Thomas's conversation with his then girlfriend, Molly Brewster, in which Thomas tells Brewster "that's a thirty thousand dollar car dude." (C.R., Mots. in Lim. (dkt. ##81, 83, 145).)

Following a delay in the trial at the request of defendant Thomas's trial counsel, the court held the final pretrial conference in February 2017, ruling that the government could present the recording of Thomas's statement about the value of his car to the jury. Although Thomas's counsel objected to the admission of the recording as both cumulative and prejudicial, the court overruled the objection, finding that the recording was relevant because the defense would not stipulate to the value of the car. A joint trial was scheduled to proceed shortly after, but was again delayed because an irreconcilable conflict of interest arose with respect to defendant Thompson's trial counsel. Finally, shortly before trial, Thompson pleaded guilty and agreed to testify for the government against Thomas.

B. Trial

A two-day jury trial commenced on October 16, 2017. In its case-in-chief, the government submitted evidence in support of its theory that Thomas had planned the robbery. Specifically, Lynn testified that Thomas had told him about his plans to rob a bank in rural Wisconsin. The government also submitted phone records showing that the two other participants in the robbery, James Thompson and Beth Manbauman both communicated with Thomas at a phone number registered to "Frank Smith" in Irvine, California. Both Manbauman and Thompson also testified to Thomas's and their respective roles in the robbery.

3

Thomas's theory of defense was that another known acquaintance of Thompson and Thomas, James Britton, had actually committed the robbery with Thompson. Defense counsel pursued this theory in multiple ways. To start, defense counsel stated during opening that James Coney was expected to testify as part of the prosecution's case and that Coney had provided information to law enforcement who were looking for the individuals responsible for the bank robbery. Defense counsel also intimated that the evidence would show that Coney merely "heard" that Thomas was involved, and that Coney's statements to law enforcement were false and motivated by a cash reward. However, the government never called Coney to testify, so in closing, Thomas's counsel stated that "we didn't get to hear him. I didn't get to, you know, ask him everything I really wanted to, but we heard enough." (C.R., Tr. Second Day (dkt.#235) at 286).) Counsel further emphasized that: "We don't have DNA. We don't have fingerprints… We don't have anything. All we have is the word of James Coney, the always vacillating word of James Coney…the narrative [FBI Agent Brown] knows is the one that James Coney supplied, and so he runs with that, and that becomes what they want to feed, and all the evidence that they want to collect is the one that fits that narrative." (C.R., Tr. Second Day (dkt.#235) at 253-255).)

Thomas's counsel also submitted evidence about a dog bite that he sustained before the robbery that left Thomas with a visible limp, which was confirmed at trial by two witnesses, Molly Brewster and Michael Ellestad. Specifically, Brewster acknowledged that Thomas stated that he had sustained a "bad dog bite" and may have carried pepper spray in response to that incident. (C.R., Tr. First Day (dkt.#234) at 271).) Ellestad also

4

acknowledged that Thomas reported his dog bite and subsequent contacts with law enforcement. (C.R., Tr. Second Day (dkt. #235) at 264).)

Defense counsel also attempted to address Thomas's criminal history prophylactically by acknowledging it up front, conceding in the opening statement that: "Sometimes [Thomas] sells drugs to get by. Sometimes he steals credit cards, forgery, makes his money that way, stuff like that." (C.R., Tr. First Day (dkt.#234) at 123).) In closing, Thomas's counsel impressed upon the jurors the government's burden, especially considering the sympathy they might feel towards the victims of the bank robbery and any dislike they have for Thomas. Defense counsel reminded the jury that they received evidence about Britton's involvement in the robbery. Counsel closed by stating, "Thomas is not a great guy" and "if the charge was you're a despicable human being, go for it, guilty, guilty, but it's not." (C.R., Tr. Second Day (dkt. #235) at 265).) The jury returned a guilty verdict on both counts of the indictment.

## C. Appeal

Thomas appealed his conviction to the Seventh Circuit, challenging the court's evidentiary rulings and jury instructions and bringing a Speedy Trial Act claim. *United States v. Thomas*, 933 F.3d 685 (7th Cir. 2019) Among his challenges to the evidence, Thomas took issue with the admission of his probation officer's testimony, the recordings of his phone call from jail regarding his car, and the prosecution's use of the incorrect legal standard during closing arguments. *Id.* at 689. The Seventh Circuit found no merit in any of Thomas's claims.

5

Reviewing the testimony of Thomas's probation officer under the plain error standard, the court found that after "Thomas disputed whether the number belonged to him. . . the government was entitled to offer evidence to corroborate testimony tying Thomas to the telephone number." *Id.* at 691. The court further found that any risk of prejudice was reduced by the defense's decision to bring up Thomas's criminal history of its own accord. *Id.* at 689.

In a similar vein, the court found no error in admitting Thomas's recorded statements regarding the value of his car because he would not stipulate to its value. *Id.* at 692. The court reasoned that "without a stipulation, this recording was the government's only evidence as to the supposed $30,000 value of the car." *Id.* Moreover, limited references to Thomas's time in pretrial detention was unlikely to be unfairly prejudicial given the other evidence of his past felony convictions and arrest on the charges before the jury.

Finally, the court found no error in the prosecution's use of the incorrect standard when explaining the meaning of intimidation during closing because the trial court "firmly" and immediately corrected the prosecutor's error in front of the jury. *Id.* at 693. In addition, the Seventh Circuit emphasized that "[t]he jury instructions used the proper standard, and, given the evidence that Thompson brandished a gun to terrify the robbery victims, nuances about the standards for intimidation were unlikely to have affected the verdict." *Id.*

OPINION

Habeas "relief under § 2255 is an extraordinary remedy because it asks the district court to essentially reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, relief under § 2255 is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)). For the same reason, a motion under § 2255 cannot be used to relitigate matters that were raised on direct appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007); *De Welles v. United States*, 372 F.2d 67, 70 (7th Cir. 1967). Likewise, claims omitted on direct appeal may only be considered on collateral review if the petitioner demonstrates good cause for failing to raise the issue previously and shows actual prejudice based on the alleged error. *See, e.g., Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005).

Thomas claims that his trial counsel was ineffective by failing to: (1) request a *Franks* hearing to challenge the warrant application used to obtain information from Thomas's phone; (2) file motions in limine regarding the admissibility of Robert Lynn's testimony about a jailhouse conversation; (3) file motions in limine regarding the testimony of Michael Ellestad, Thomas's parole officer; (4) investigate Thomas's alibi regarding a dog bite and failure to interview relevant witnesses; (5) investigate the damage to Thomas's Mercedes-Benz and the valuation of that vehicle; (6) object to the prosecution's remark that Thomas admitted that the Mercedes Benz 'cost him' $30,000;

7

(7) object to the prosecution's closing statements that incorrectly stated the legal standard for intimidation; (8) call James Coney as a witness; or (9) call witnesses related to Thomas's dog bite alibi. Thomas further claims that his trial counsel performed ineffectively by discussing Thomas's previous convictions. Finally, Thomas claims that the government's use of the incorrect legal standard during closing amounted to prosecutorial misconduct, and the court's decision to admit Thomas's recorded statements regarding the value of his Mercedes constituted an abuse of discretion.

I. Issues Already Litigated on Direct Appeal

As an initial matter, Thomas may not relitigate (a) the admission of the parole officer's testimony, (b) admission of the jail phone call, or (c) the government's language in its closing argument in this motion. As noted above, "relitigation of trial issues under different labels or on expanded allegations that could have been made in the first instance is not contemplated by section 2255." *De Welles*, 327 F.2d at 70.

A. Parole Officer Testimony

As he did in his direct appeal, Thomas again challenges his trial counsel's failure to file motions in limine contesting the admissibility of testimony from his probation officer, Michael Ellestad. Thomas contends that the inclusion of Ellestad's testimony was cumulative and prejudicial, and that his counsel's failure to file motions in limine demonstrated negligence as opposed to reasonable strategy. However, the Seventh Circuit already addressed the prejudice concern head on, holding that: "Thomas's criminal past was already before the jury and the likelihood that this aspect of Officer Ellestad's

8

testimony had any effect on the jury is negligible... We doubt there was any error, and there was certainly no plain error, in admitting this testimony." *Thomas*, 933 F.3d at 691. Given this holding, Thomas's attempt to repackage his dissatisfaction with the admission of Ellestad's testimony as ineffective assistance of counsel is neither meritorious nor appropriate in a § 2255 motion.

### B. Jail Phone Call

Thomas would challenge two aspects of the admission of his jailhouse conversation about his car as well, but these issues also were fully litigated in his direct appeal. First, Thomas faults his counsel for failing to object to the government's assertion in its opening that he admitted paying thirty thousand dollars for his car, when he had only stated "that's a thirty thousand dollar car[.]" Second, Thomas argues that the court abused its discretion by admitting the jail phone call because it was unfairly prejudicial and of no relevance.

However, the Seventh Circuit already approved admission of the phone call under an abuse of discretion standard, finding it neither cumulative nor prejudicial. In particular, despite Thomas's argument to the contrary, the court deemed the value of his car relevant because he would not stipulate to that fact, and his counsel argued in closing that the value of the car was far less than $30,000. *Thomas*, 933 F.3d at 692. Moreover, the court found that playing the phone call from a jail was not unfairly prejudicial because "the occasional reference to the fact that the defendant had at some point been in jail while awaiting trial is unlikely to undermine the presumption of innocence and the defendant's right to a fair trial." *Id.* (internal quotations omitted) (citing *United States v. Johnson*, 624 F.3d 815, 821-

9

822 (7th Cir. 2010)). Since Thomas neither addresses this ruling nor explains how the Seventh Circuit did not already definitively resolve the admissibility of this phone call, there is nothing more to address under § 2255.

### C. Prosecutorial Misconduct

Finally, Thomas reasserts his challenge to the Seventh Circuit about the government's misstatement in closing argument as to the reasonable person standard by repackaging it as prosecutorial misconduct. Specifically, he argues that the "[t]he jury was never told that they [were] not the reasonable person standard" and this left them "with the indelible impression that they were the reasonable persons in the reasonable person standard." (C.R., Pl's Br. (dkt. #254) at 23). Again, however, the Seventh Circuit already expressly disagreed. After first explaining that "[a]s a general matter, improper comments during closing arguments rarely rise to the level of reversible error," that court considered the effects of the prosecution's comments on the fairness of the trial, and concluded that "this minor misstatement of the standard, which [the court] corrected immediately, did not deprive Thomas of his right to a fair trial. The jury instructions used the proper standard, and, given the evidence that Thompson brandished a gun to terrify the robbery victims, nuances about the standards for intimidation were unlikely to have affected the verdict." *Thomas*, 933 F.3d at 693. Once again, Thomas does not explain how the argument he wishes to pursue now differs from those fully addressed by the Seventh Circuit, and this, too, is not a basis for § 2255 relief.

**II. Remaining Ineffective Assistance of Counsel Claims**

Thomas's remaining grounds for § 2255 relief were not addressed on direct appeal, but they also lack merit. To prevail on an ineffective assistance of counsel claim, Thomas must demonstrate: (1) a constitutionally deficient performance on the part of counsel; and (2) actual prejudice because of the alleged deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Williams v. Taylor*, 529 U.S. 362, 390-391 (2000). A petitioner can only establish his counsel's ineffectiveness with a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Once ineffectiveness is established, the petitioner must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Under the first step of *Strickland*, the burden falls on the petitioner to overcome the presumption "that counsel's conduct falls within the wide range of reasonable professional assistance," as well as that trial counsel's decisions were strategic. *Weaver v. Nicholson*, 892 F.3d 878, 885 (7th Cir. 2018) (quoting *Strickland*, 466 U.S. at 689). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support he limitations on investigation." *Strickland*, 466 U.S. at 690-91; *Gilbreath v. Winkleski*, 21 F.4th 965, 982 (7th Cir. 2021).

Once a petitioner establishes that trial counsel's performance was constitutionally deficient, they must show a reasonable probability that, "but for counsel's unprofessional

11

errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This probability must be "sufficient to undermine confidence in the outcome." *Id.* With these standards in mind, this court will turn to Thomas's remaining claims of ineffective assistance of counsel.

### A. Failure to File Additional Pretrial Motions

To succeed on a claim of ineffective assistance of counsel based upon failure to file additional motions, a petitioner must demonstrate not only that there was a reasonable probability that he would have prevailed on those motions, but also a reasonable probability that he would have been acquitted had he prevailed. *See Hicks v. Hepp*, 871 F.3d 513, 526 (7th Cir. 2017); *Bynum v. Lemmon*, 560 F.3d 678, 685 (7th Cir. 2009) ("Under *Strickland*, a defendant must prove that there is a reasonable probability that, but for his lawyer's mistakes, the result of the proceedings would have been different"). Thomas has not made this showing as to any motion he now wishes his counsel had pursued.

As for the request for a *Franks* hearing, Thomas argues that the warrant application used to obtain his cell phone toll records erroneously claimed that the phone number Thomas used was registered in his name, when in fact it was registered under the name "Frank Smith." (C.R., Pl.'s Br. (dkt. #254) at 8). While this may in fact be true, an error in a warrant application alone is not a reason to hold a *Franks* hearing. "To obtain a *Franks* hearing, the defendant must make a "substantial preliminary showing" of (1) a material falsity or omission that would alter the probable cause determination, and (2) a deliberate or reckless disregard for the truth," which should be "substantiated by sworn statements

12

.
.
.
.

of witnesses." *United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014); *United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013) ("[I]t is relatively difficult for a defendant to make the 'substantial preliminary showing' required under *Franks*."). Even if Thomas could make a substantial initial showing, and he offers nothing to support his claim, then he still must prove both of those elements by a preponderance of the evidence. *Id.* Given these standards -- along with the fact that the phone number in question *was* tied to Thomas by his parole officer and two other witnesses -- a motion for a *Franks* hearing based on one inconsistency in the warrant application had little, if any, chance of success, making his trial counsel's decision not to pursue this course of conduct was a reasonable strategic decision.

Finally, even assuming that the motion for a *Franks* hearing had been successful, Thomas presents scant evidence that the result of that hearing would have suppression of any material evidence. For example, Thomas does not explain how he would have proved by a preponderance of the evidence that the phone's having been registered under another person's name would materially alter the probable cause determination, particularly given that multiple people -- including Thomas's own parole officer -- contacted him during the relevant time frame using that same phone number. An even bigger problem for Thomas is the lack of *any* evidence that the errors in the application were the result of deliberate dishonesty or a reckless disregard for the truth. Again, given the evidence of Thomas's use of the number, the confusion over the actual registrant is understandable. As such, Thomas's claim also fails the second prong of *Strickland.*

Thomas next challenges his counsel's failure to move to exclude Robert Lynn and Manbauman's testimony, but these arguments are also without merit. First, Lynn testified about a conversation he had with Thomas regarding his plans to rob a bank in rural Wisconsin, a topic which was relevant and admissible. Regardless, like the testimony of Thomas's parole officer or of phone calls regarding his car, Lynn's testimony was relevant and not unfairly prejudicial merely because it occurred in a jail for similar reasons already addressed by the Seventh Circuit on direct appeal. As such, a motion to exclude Lynn's testimony did not have a reasonable probability of success, and Thomas fails to carry his burden of showing that trial counsel was constitutionally defective in opting not to file such a motion. Second, Manbauman's recounting of her relationship with Thomas, including his heroin dealings, was relevant background for her testimony as to the role she unwittingly played in the bank robbery (getaway driver), and trial counsel's decision not to fight for its exclusion was certainly a reasonable one. Indeed, Thomas does not cite any evidentiary rules or other authority showing even a reasonable likelihood of Manbauman's testimony being excluded had trial counsel filed a motion in limine. Furthermore, even if her testimony about her addiction and Thomas's heroin dealing had been excluded, there is *nothing* to suggest that Manbauman's most probative testimony -- identifying Thomas as a participant in the robbery -- would or should have been excluded, so his attorney's failure to challenge some of her background testimony could not support a finding of deficient performance under *Strickland*.

14

**B. Failure to Call Witnesses in Rebuttal**

Thomas further faults his counsel's failure to call additional witnesses related to his so-called dog bite alibi. As an initial matter, "[a] lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review. The Constitution does not oblige counsel to present each and every witness that is suggested to him." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997) (finding counsel's failure to call alibi witnesses where the government had proved all elements was not deficient performance). "If counsel has investigated witnesses and consciously decided not to call them, the decision is probably strategic. An outright failure to investigate witnesses, however, is more likely to be a sign of deficient performance." *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005). Thus, "[w]hether deficient performance occurred … depends on factors like counsel's overall diligence, the likely relevance of the witness's testimony, whether alternative ways of proving the point exist, and the strength of the government's case." *Id*.

Here, Thomas represents that he informed his trial counsel that he had been attacked by a dog three years before the bank robbery, as well as the names of multiple witnesses to the dog attack and that his resulting injuries included a noticeable limp not seen on the video of the bank robbery. In Thomas's view, "[a]ny reasonable attorney would've capitalized on this information especially if it could be verified," yet "trial counsel did not interview any of the witnesses, did not take pictures of the dog, defendant's left leg . . . . or get the record from animal control." (C.R., Pl.'s Br. (dkt #254) at 11-12.)

Contrary to Thomas's assertion, however, his trial counsel's decision not to call witnesses related to the dog bite alibi does not appear to be an unreasonable trial strategy,

15

even assuming that trial counsel did not call witnesses because of a lack of proper investigation. To start, counsel did not ignore Thomas's dog bite theory; rather, he asked government witnesses about the dog bite on cross-examination, some of whom support Thomas's position that he would have been walking with a limp on the day of the robbery. While Thomas may take issue with counsel's decision to ask more witnesses about the dog bite on cross, or to call others to corroborate it, the line of questioning on cross suggests that counsel chose to marshal resources into the witnesses already available, as opposed to introducing additional witnesses and the potential for damaging cross-examination. Regardless, choosing not to introduce additional witnesses and exhibits into Thomas's case was a reasonable approach, especially given that evidence corroborating Thomas's injury and limp theory would have been minimally helpful at best in the face of eyewitness ID testimony by the two others involved in the bank robbery -- Thompson and Manbaumann -- as well as multiple others who identified defendant during events leading up to and immediately following the robbery. Indeed, such additional evidence may have been excluded in any event as cumulative to a peripheral aspect of Thomas's principal theory of defense.

Indeed, for this same reason, Thomas has not carried his burden of showing that the testimony of additional witnesses regarding the dog bite would have had a reasonable probability of altering the outcome of the trial. Not only had trial counsel already elicited testimony from two witnesses regarding Thomas's dog bite, scar and limp, but the prosecution made no efforts to rebut this evidence. Moreover, other than conclusory arguments that the outcome could have been different, Thomas makes no showing of how

16

additional evidence of the dog bite would have convinced the jury of his theory that James Britton had conducted the robbery, not he. Given the strength of the evidence identifying Thomas as a participant in the robbery and Thomas's dearth of arguments on this point, he fails to meet the threshold for ineffective assistance of counsel in this regard as well.

Thomas next challenges his trial counsel's decision not to call James Coney as an adverse witness. Among other things, Thomas represents that "[c]ounsel assured defendant that Coney was taking the witness stand" and "was essential to their defense[,]" then asserts that counsel's failure to call Coney after the government declined to do so was an act of "pure neglect." (C.R., Pl.'s Br. (dkt. #254) at 15). However, this conclusory assertion does not demonstrate deficient performance; if anything, the record before the court at trial suggests the opposite. Thomas's counsel capitalized on the government's decision not to call Coney as a witness, using him as the proverbial "empty chair" to highlight that the government's case against Thomas started with Coney, who had multiple reasons to lie. Thomas does not acknowledge the strategy behind his counsel's handling of Coney, much less explain how pushing for his testimony as an adverse witness would have helped his theory of defense. Instead, Thomas merely points out that Coney was an important part of the government's case against him, a point that his trial counsel communicated to the jury even in Coney's absence. Accordingly, Thomas has not shown that his counsel was deficient by failing to call additional witnesses.

### C. Failure to Investigate Further

Finally, Thomas falls far short of meeting his burden to show his trial attorneys' failed to investigate certain aspects of his theory of defense, much less demonstrated a

17

constitutional deficiency. "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary… In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Moreover, a petitioner alleging ineffective assistance of counsel due to failure to investigate must present "a comprehensive showing as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003).

To begin, Thomas again asserts that trial counsel's failure to investigate the dog bite constituted ineffective assistance of counsel, insisting that such an investigation would have yielded "photos of the dog, records of [the] incident," and the contact information for numerous witnesses who could have corroborated the dog bite. However, his trial counsel's decision not to pursue this line of investigation was reasonable for the reasons stated above. (C.R., Pl.'s Br. (dkt. #254), at 11). In particular, Thomas's trial counsel was already prepared to bring up the dog bite with other witnesses on cross examination, and this theory of defense was unrebutted by the government, making further elaboration on the dog bite minimally helpful at best in the face of nearly overwhelming evidence that Thomas *was* the other bank robber with Thompson, as well as more likely cumulative rather than probative. As such, trial counsel's decision not to use limited time and resources investigating the matter was reasonable.

Thomas also continues to criticize his trial counsel's failure to investigate the value of his Mercedes-Benz, which the government asserted explained part of expenditures

18

following the robbery. In particular, Thomas maintains that his counsel should have contacted the dealership where Thomas purchased the car or looked into its bluebook value, either of which would have demonstrated that the price of the vehicle was below $30,000. Unfortunately, Thomas's argument is completely speculative since he offers proof of neither. Nor has Thomas shown how a lower value of the vehicle in question would have had a reasonable likelihood of altering the outcome of the trial. Even so, Thomas's trial counsel took efforts to rebut the value of the Mercedes, having one of the government's witnesses acknowledge that the car had over 149,000 miles on it and multiple bullet holes Tr. First Day (dkt. #234), at 160-163), making additional evidence suggesting that the value of the car was below $30,000 unlikely to have meaningfully impacted the outcome of the trial, particularly given other, much stronger evidence of defendant's guilt. For these reasons, trial counsel's decision not to use limited time and resources to further investigate the value of the vehicle defendant purchases after the bank robbery is simply not enough to demonstrate ineffective assistance of counsel.

### III. Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), meaning that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000)). For all the reasons just discussed, Thomas has not made such a

19

showing. Therefore, a certificate of appealability will not issue.

ORDER

IT IS ORDERED that:

1. Pursuant to Rule 4 of the Rules Governing Section 2255 Cases, petitioner Julian Thomas's motions to vacate (Case No. '44 (dkt. #254); '783 (dkt. #1)) is DENIED and his petition is DISMISSED for failure to state a plausible claim for relief.

2. Thomas's motion for decision on motion is further DENIED AS MOOT. (Case No. '783 (dkt. #5).)

3. No certificate of appealability shall issue in either case.

Entered this 8th day of November, 2023.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge